IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JIMMIE STEPHEN,

    Plaintiff,                    No. 2:10-cv-01678 KJM KJN P

    vs.

FEDERAL RECEIVER J.C. KELSO,    ORDER and
et al.,

                                       FINDINGS AND RECOMMENDATIONS

    Defendants.

_____/

        Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis,[1] in this civil rights action filed pursuant to 42 U.S.C. § 1983.  The action proceeds against defendant physicians Hsieh and Traquina, pursuant to plaintiff's Second Amended Complaint.  (Dkt. No. 22.)  Plaintiff initiated this action while he was incarcerated at California State Prison-Solano.

---

[1] Plaintiff proceeds in forma pauperis in this action pursuant to an exception to the "three strikes" rule set forth in 28 U.S.C. § 1915(g).  Plaintiff was designated a three-strikes litigant in Stephen v. Hernandez, Case No. 08-cv-0750 BEN BLM P (2008), based on a finding that plaintiff had filed six prior actions that were dismissed as frivolous or for failure to state a claim.  As a result, plaintiff became ineligible to proceed in forma pauperis without a finding that he was "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).  In the present case, the undersigned authorized plaintiff to proceed in forma pauperis, based on the finding that "plaintiff made a sufficient showing of imminent danger of serious physical injury under Section 1915(g), based on plaintiff's allegations that he was denied physician-recommended colon surgery premised on the confirmed finding of a polyp." (Dkt. No. 21 at 2.)

1

Plaintiff was recently transferred to San Quentin State Prison.  Several matters are pending.[2] Addressed herein are the following:  (1) defendants' motion to dismiss defendant Traquina from this action, and to dismiss plaintiff's damages claims against both defendants in their official capacities; (2) plaintiff's motion to strike the affirmative defenses set forth in defendant Hsieh's answer to the complaint; (3) plaintiff's motion to strike discovery propounded on him by defendant Hseih; (4) plaintiff's request to file a proposed supplemental complaint; and (5) plaintiff's motions for preliminary injunctive relief.

       For the reasons set forth below, the court orders that:  plaintiff's motion to strike the affirmative defenses set forth in defendant Hsieh's answer to the Second Amended Complaint is denied; plaintiff's motion to strike defendant Hsieh's discovery requests is granted, without prejudice to the discovery requests being later propounded; and plaintiff's motion for issuance of an order to show cause is denied.  Additionally, the undersigned recommends that: defendants' motion to dismiss be granted in part and denied in part – the court should dismiss plaintiff's damages claims against defendants in their official capacities, but deny defendants' motion to dismiss defendant Traquina from this action; plaintiff's motions for preliminary injunctive relief should be denied; plaintiff's request for leave to file his proposed Amended Supplemental Complaint should be granted, and Dr. Wenneker should be added as a defendant in this action; and plaintiff should be granted leave to file, within twenty-eight (28) days after the filing date of the district judge's order, a comprehensive Third Amended Complaint against defendants Hsieh, Traquina and Wenneker.

////

////

---

[2] Pending matters, not addressed in the instant order and findings and recommendations, include the district judge's review of the undersigned's findings and recommendations filed June 29, 2011 (Dkt. No. 30), which recommended that plaintiff's motion for preliminary injunctive relief filed June 20, 2011 (Dkt. No. 25), be denied.  Also pending is plaintiff's second motion to disqualify the district judge.  (Dkt. No. 34.)

I. <u>Introduction</u>

Pursuant to the operative Second Amended Complaint ("SAC" or "complaint") (Dkt. No. 22), plaintiff alleges that, since he arrived at California State Prison-Solano ("CSP-SOL"), on November 14, 2008, he complained of stomach pains to his assigned physician, Dr. Hsieh, and repeatedly requested a colonoscopy. Plaintiff alleges that Dr. Hsieh unreasonably denied plaintiff's requests for a colonoscopy ("on 12-1-09, 2-5-10, 3-5-10 and 3-8-10" (<u>id.</u> at 6)), until June 7, 2010, when plaintiff obtained his first colonoscopy. The colonoscopy was performed by Dr. Sogge, who removed two polyps during the procedure, but determined that a third polyp was "so large" that plaintiff needed to be scheduled for "emergency" surgery (a colectomy resection), which Dr. Sogge allegedly sought to schedule on June 14, 2010. (<u>Id.</u> at 3, 6.) Plaintiff complains that it took Dr. Hsieh "45 days"[3] to arrange for this "emergency" surgery, which was performed on July 21, 2010, by Dr. Wenneker, at Queen of the Valley Hospital, and required the removal of six inches of plaintiff's colon. (<u>Id.</u>) (The administrative appeal on this matter indicates that plaintiff was seen at the hospital on June 22, 2010, for a surgical consultation, and that he was hospitalized for the surgery from July 20, 2010, until July 26, 2010. (Dkt. No. 36 at 6-7, 13.))

The remaining allegations of the Second Amended Complaint are less clear. Plaintiff appears to allege that, after his July 2010 surgery, it was recommended that he have "further surgery" (or a follow-up visit) "within 90 days from 10-12-10," "by 'Dr. Wenneker' of 'Angel Mercy Hospital.'" (Dkt. No. 22 at 3, 5, 6.) In his opposition to the motion to dismiss, plaintiff states that he "'finally saw Dr. Lee' on 2-16-11 when 'requested' and 'right' to 'monthly visits' after 7-21-10 'serious surgery' . . . ." (Dkt. No. 36 at 16.)

Although the Second Amended Complaint asserts a violation of plaintiff's rights under the Fifth, Eighth and Fourteenth Amendments (Dkt. No. 22 at 8), the court has construed

---

[3] Plaintiff's calculation of a "45-day" delay counts both the date surgery was first recommended (June 7, 2010), and the date of surgery (July 21, 2010).

3

the complaint to state only a potentially cognizable Eighth Amendment claim for deliberate indifference to plaintiff's serious medical needs. (Dkt. No. 23 at 1-2 ("based on plaintiff's allegations that a diagnostic colonoscopy was improperly delayed and, once it was completed and formed the basis of a physician-recommended 'urgent' surgery, that plaintiff's colon surgery was improperly delayed, resulting in the loss of a portion of plaintiff's colon and the possibility of further surgery").

Pursuant to the Second Amended Complaint, plaintiff sues defendants Hsieh and Traquina in both their individual and official capacities. Plaintiff seeks ten million dollars ($10,000,000) in compensatory damages, an indefinite amount of punitive damages, and broadly seeks "declaratory and injunctive relief." (Dkt. No. 22 at 3, 8.)

On November 21, 2011, plaintiff filed a Notice of Change of Address informing the court that he had been moved to San Quentin State Prison ("San Quentin"). (Dkt. No. 50.)

II. Defendants' Motion to Dismiss

Defendants move to dismiss defendant Traquina from this action, on the ground that plaintiff's only claim against Dr. Traquina, an Eighth Amendment claim for deliberate indifference to serious medical needs, is impermissibly premised on Dr. Traquina's alleged "supervisory liability." In addition, defendants move to dismiss plaintiff's claim for monetary damages against both defendants in their official capacities, on the ground that it is precluded by the Eleventh Amendment. Plaintiff filed an opposition to the motion to dismiss (Dkt. No. 36); defendants filed a reply (Dkt. No. 38).

In tandem with filing their motion to dismiss (Dkt. No. 31), defendants filed an answer on behalf of defendant Hsieh (Dkt. No. 32), conceding that "Dr. Hsieh filed an answer to Stephen's complaint because it states an Eighth Amendment claim at this stage" (Dkt. No. 43 at 2 n.1).

For the following reasons, the court recommends that defendants' motion to dismiss Dr. Traquina from this action be denied, but that defendants' motion to dismiss

4

plaintiff's claim for monetary damages against both defendants in their official capacities be granted.

A.  Legal Standards

Rule 12(b)(6), of the Federal Rules of Civil Procedures, authorizes motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F. 3d 962, 965 (9th Cir. 1999). To survive dismissal for failure to state a claim, a claim must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). That is, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Feiner & Co., 896 F. 2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F. 2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's

liberal interpretation of a pro se complaint may not supply the essential elements of a claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F. 2d 266, 268 (9th Cir. 1982).

B.  Dr. Traquina

Defendants contend that Dr. Traquina should be dismissed from this action, on the ground that plaintiff's only claim against Dr. Traquina is premised on his alleged "supervisory liability." At all relevant times, Dr. Traquina was the Chief Medical Officer ("CMO") at CSP-SOL.

"Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009) (citations and internal quotations omitted). "Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability. A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989) (citations omitted). Thus, "[a]lthough there is no pure respondeat superior liability under § 1983, a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them.'" Preschooler II v. Clark County School Bd. of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007), quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Additionally, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen, 885 F.2d at 646, quoting Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

On a motion to dismiss, the plaintiff "does not need to show with great specificity

6

how each defendant contributed to the violation of his constitutional rights.  Rather, he must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law.  See Hydrick v. Hunter, 466 F.3d 676, 689-90 (9th Cir. 2006) (denying policy-making officials qualified immunity at the motion to dismiss stage based on inferences that the officials played an instrumental role in the alleged abuses)." Preschooler II, at 1182.

The Second Amended Complaint only generally references defendant Traquina, e.g., pursuant to allegations that plaintiff's colonoscopy and first surgery were delayed "based on 'overcrowding' and 'monies' or 'budgetary' . . . under 'policy' 'custom' 'practice' of 'Kelso' and 'Traquina'." (Dkt. No. 22 at 6; see also id. ("under policy practice 'Kelso' 'Traquina' 'Swarthout'"); id. at 7 ("under policy of 'Swarthout' 'Traquina' and 'Kelso' based on 'willful overcrowding'").  Similarly, in his opposition to defendants' motion to dismiss, plaintiff asserts that Dr. Traquina demonstrated "personal involvement" in the conduct challenged by this action, by "'failing to implement' and 'maintain' 'a' 'system of tracking inmate, plaintiff, 'patients' by 'birthdate' and 'scheduling' the 'recommended services' as 'required' under 'CDCR' 'procedures' . . . ."  (Dkt. No. 36 at 1-2.)

However, also in his opposition, plaintiff asserts that Dr. Traquina was personally involved in the 45-day delay of plaintiff's July 2010 surgery, despite clear knowledge that the surgery was deemed "urgent."  (Dkt. No. 36 at 1- 3.)  Plaintiff filed a copy of the Director's Level Review of his pertinent administrative grievance, issued August 19, 2010, which provides in pertinent part that, "Dr. Hsieh submitted an urgent referral for a colectomy procedure, which was approved by the Chief Physician and Surgeon [Dr. Traquina], and was pending scheduled with an outside facility." (Dkt. No. 36 at 6-7.)  (See also id. at 13 (Second Level Review of same administrative grievance, issued June 21, 2010, which states in pertinent part that "Dr. Hsieh submitted an urgent referral fo a colectomy procedure, which has been approved by the Chief Physician and Surgeon [Dr. Traquina], and is pending scheduling with an outside facility."))

1  As defendants correctly contend, plaintiff's general allegations against Dr. Traquina, based on the alleged systemic failings of CSP-SOL's medical referral procedures and policies, are improperly premised on Dr. Traquina's alleged "supervisory liability," and are therefore noncognizable for the reasons stated above.  However, plaintiff's allegations, supported by the record, that Dr. Traquina was directly involved in approving plaintiff's surgical referral, support an inference that Dr. Traquina had a personal role in the timing of plaintiff's surgery. These allegations (as stated in the complaint, explained in plaintiff's opposition, and supported by the underlying administrative grievance), establish the requisite personal link to plaintiff's claim of deliberate indifference to his serious medical needs, viz., that Dr. Traquina, despite awareness that the referral was designated "urgent," may have contributed to the allegedly protracted 45-day delay in plaintiff obtaining his July 2010 surgery.  The court cannot, on the present record, determine whether this delay constituted deliberately indifference.  See Farmer v. Brennan, 511 U.S. 825, 842 ("it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm").  While "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference," Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985), "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established 'deliberate indifference' on the part of the defendant," McGuckin, 974 F.2d 1050, 1061 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Therefore, the court recommends that defendants' motion to dismiss Dr. Traquina from this action be denied.  For this reason, and other reasons set forth below, defendants will be required to file an amended answer that includes both defendants Traquina and Hsieh (as well as newly-named defendant Wenneker).

C.  Eleventh Amendment Immunity

Defendants next move to dismiss plaintiff's damages claims against defendants in

their official capacities. Plaintiff does not directly address this matter, but responds generally that he sues defendants in their both their personal and official capacities. (Dkt. No. 36 at 4.)

"The Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court. That is so because a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents. However, a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." Dittman v. California, 191 F.3d 1020, 1026 (9th Cir. 1999), citing Kentucky v. Graham, 473 U.S. 159, 169 (1985), and Quern v. Jordan, 440 U.S. 332, 337 (1979) (internal punctuation and quotations marks omitted); accord, Regents of the University of California v. Doe, 519 U.S. 425, 429 (1997).

These principles permit plaintiff to seek damages from defendants only in their personal capacities. Therefore, this court recommends granting defendants' motion to dismiss plaintiff's damages claim against defendants Hsieh and Traquina in their official capacities.

III. Plaintiff's Motion to Strike Defendant Hsieh's Affirmative Defenses

Plaintiff moves to strike the affirmative defenses set forth in defendant Hsieh's answer. (Dkt. Nos. 37, 46.) Defendants filed an opposition. (Dkt. No. 43.) Plaintiff seeks an order of this court striking all fourteen of defendant Hsieh's affirmative defenses (see Answer, Dkt. No. 32 at 5-7), on the grounds that the answer was prematurely filed, and "the affirmative defenses [therein]. . . are not defenses that would act as a complete defense to plaintiff's complaint for damages." (Dkt. No. 37 at 1.)

A. Legal Standards

Rule 12(f), of the Federal Rules of Civil Procedure, authorizes a court, pursuant to motion or sua sponte, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "To strike an affirmative defense, the moving party must convince the court that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the

defense succeed.  The grounds for the motion must appear on the face of the pleading under attack or from matter which the court may judicially notice." SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal.1995) (citations and internal quotation marks omitted).  "[A] motion to strike which alleges the legal insufficiency of an affirmative defense will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." Barnes v. AT & T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citations and internal quotation marks omitted). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)).

    B. Discussion

The court initially notes the inaccuracy of plaintiff's statement that defendant Hsieh's answer was prematurely filed before defendants were served with the summons and complaint.  Although this inference was reasonable, based on the filings in this case at the time the answer was filed on July 5, 2011 (Dkt. No. 32), defendants thereafter filed waivers of service that they had previously signed on June 22, 2011 (see Dkt. No. 35).

Moreover, the court finds no basis for concluding that any of Dr. Hsieh's affirmative defenses are improperly pled or legally insufficient.  The fact that some may not provide a "complete defense" is immaterial; none appear to be "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f).

Therefore, plaintiff's motion to strike the affirmative defenses in defendant Hsieh's Answer is denied.  Nevertheless, for reasons stated elsewhere in this order and findings and recommendations, defendants will be required to file an amended answer.

IV. Plaintiff's Motion to Strike Discovery Propounded by Defendant Hsieh

Plaintiff moves to strike discovery requests served on him by defendant Hsieh, on the ground that they were prematurely propounded, as evidenced by the matters pending herein,

1  and because no discovery or scheduling order has been issued in this case. (Dkt. No. 39.)
2  Defendants respond that Dr. Hsieh should be permitted to propound discovery during the
3  pendency of these matters because he filed an answer. (Dkt. No. 44.) Defendant Hsieh also
4  argues that the requested discovery is not impacted by resolution of the pending motions, that
5  plaintiff will be required to respond to discovery requests in any case, and that plaintiff is not
6  prejudiced by being required to do so now. (Id.)

7  While parties to a prisoner action are exempt from the initial disclosure
8  requirements of Federal Rule of Civil Procedure 26, they are free to agree to conduct discovery
9  prior to the issuance of a discovery order. However, it is the usual practice of this court to refrain
10  from compelling compliance with discovery requests before all defendants have answered, and
11  the court has issued an initial scheduling order that establishes the parameters and deadlines for
12  discovery. See e.g. Scanlan v. Sisto, 2012 WL 78381, *6 (E.D. Cal. 2012) (denying as premature
13  plaintiff's motion for a subpoena, explaining that "[d]iscovery will commence when the court
14  issues an order setting the schedule and terms of discovery, as the court ordinarily does after the
15  remaining defendants file their answers"); Suknaich v. Yates, 2011 WL 5102710, *1 (E.D. Cal.
16  2011) (denying as premature plaintiff's motion for discovery, pursuant to the court's policy, set
17  forth in its "First Informational Order" issued in each prisoner case, that "[n]o discovery may be
18  conducted without court permission until an answer is filed and the court issues the discovery
19  order" (internal quotation marks omitted)).

20  A "Discovery and Scheduling Order" has not been issued in the present case, due
21  to the pendency of defendant Traquina's motion to dismiss, notwithstanding the filing of an
22  answer by defendant Hsieh. Therefore, plaintiff is not required to respond to defendant Hsieh's
23  currently pending discovery requests. Accordingly, plaintiff's motion to strike defendant Hsieh's
24  discovery requests as premature is granted. However, following the issuance of the scheduling
25  order the defendants are free to propound the discovery requests to plaintiff.
26  ////

V. Plaintiff's Request to File Supplemental Complaint

Plaintiff has filed a proposed "Amended Supplemental Complaint" (Dkt. No. 42),[4] and a request (Dkt. No. 41) that it be read in tandem with plaintiff's Second Amended Complaint. The proposed Amended Supplemental Complaint ("supplemental complaint") contains factual allegations of allegedly relevant matters that occurred after plaintiff filed his Second Amended Complaint, and seeks to add Dr. Wenneker as a defendant. Although defendants have had sufficient time to respond to this matter, they have not done so.

A. Legal Standards

"Rule 15(d) [Federal Rules of Civil Procedure] provides that a court may permit a party to serve a supplemental pleading setting forth transactions, occurrences, or events that have happened since the filing of the pleading to be supplemented, thereby bringing the case up to date. Leave must be sought by motion, upon reasonable notice to the other parties, and the court may impose such terms as are just. The purpose of subdivision (d) is to promote as complete an adjudication of the dispute between the parties as is possible." Wright, Miller, Kane & Marcus, 6A Fed. Prac. & Proc. Civ. § 1504 (2d ed. 2010). "While leave to permit supplemental pleadings is favored, it cannot be used to introduce a separate, distinct and new cause of action. See Planned Parenthood of So. Arizona v. Neely, 130 F.3d 400, 402 (9th Cir.1997). Matters newly alleged in a supplemental complaint must have some relation to the claims set forth in the original pleading. See Keith v. Volpe, 858 F.2d 467, 474 (9th Cir.1988)." Estrada v. Rowe, 2010 WL 957120, *1 (N.D. Cal. 2010).

B. Discussion

Plaintiff's proposed supplemental complaint comes within the purpose of Rule 15(d), because it is limited to relevant new factual allegations that occurred after plaintiff filed

---

[4] Plaintiff withdrew (Dkt. No. 41) his original "Supplemental Complaint" (Dkt. No. 40), filed one day earlier, apparently because it was handwritten; the "Amended Supplemental Complaint" is typed.

his Second Amended Complaint.  The proposed supplemental complaint alleges that plaintiff underwent a second colonoscopy on July 25, 2011, performed by Dr. Sogge, who discovered markings he had made June 7, 2010 (pursuant to conducting plaintiff's first colonoscopy), on the polyp that was purportedly removed by Dr. Wenneker on July 21, 2010.  As plaintiff states, "what did Dr. Wenneker remove on 7-21-10[?]"  (Dkt. No. 42 at 3.)  Plaintiff alleges that his "pain and suffering [were] exacerbated unnecessarily by Wenneker by failure to perform serious surgery to remove 40 cm polyp o[n] 7-21-10."  (Id. at 4 (internal citations omitted).)

These new allegations warrant granting plaintiff's request to file his proposed supplemental complaint, which states a potentially cognizable Eighth Amendment claim of deliberate indifference against Dr. Wenneker.

However, a subsequently-filed motion in this action, filed October 14, 2011 (Dkt. No. 47, addressed separately below), demonstrates the existence of yet further relevant facts that should be incorporated in a comprehensive pleading.  While proferred for other reasons, plaintiff states in pertinent part:

> This lawsuit is pending . . . as well as the botched surgery of 7-21-10 whereas doctor willfully and negligently removed plaintiff['s] entire lower intestines and missed the polyp whereas was discovered on 2nd colon[osc]opy of 7-25-11 over a year later as doctor whom botched first surgery willfully allowed to do 2nd surgery against plaintiff['s] will . . . whereas had to cut plaintiff['s] upper chest area to allow top intestines to be freed to stretch to lower area to connect after removal of infected poly on 8-17-11. . . .

(Dkt. No. 47 at 6 (internal quotation marks omitted); see also Dkt. Nos. 45, 49.)  Apparently, Dr. Wenneker performed the second surgery on plaintiff, on August 17, 2011.  These relevant factual allegations should also be included in the operative complaint.

For these reasons, subject to the district judge's review of this court's findings and recommendations regarding defendants' motion to dismiss, the undersigned recommends that the court, forthwith:  (1) grant plaintiff's request for leave to file his proposed amended supplemental complaint, and to add Dr. Wenneker as a defendant in this action; and (2) grant plaintiff leave

13

to file a comprehensive Third Amended Complaint, against defendants Drs. Hsieh, Traquina and Wenneker, that includes the allegations of plaintiff's Second Amended Complaint and Amended Supplemental Complaint, as well the relevant allegations of plaintiff's other filings.

VI.   Plaintiff's Motion for Issuance of an Order to Show Cause

In a motion signed by plaintiff on August 15, 2011, two days before his second surgery, but filed in this court on August 26, 2011, plaintiff requested an "emergency order to show cause within 5 days reasons plaintiff have not had emergency surgery after botched surgery of 7-21-10 when urgent emergency 13 months ago" (sic) (Dkt. No. 45 at 1 (internal quotation marks omitted)), subtitled "Reasons same Doctor Wenneker is scheduled to do 2nd surgery . . .," and "Reasons Dr. Hsieh is handling treatment in this matter. . . ." (id.).  Pursuant to this motion, plaintiff sought both an "emergency order to show cause reasons emergency surgery has not been performed. . . ," an order requiring "emergency surgery by [a] doctor not aff[ia]liated with this lawsuit. . .," and an order requiring that the procedure be conducted at an "appropriate hospital [where] prejudice is not practiced against plaintiff [based] on prior visit and blacks as a race. . . ." (Id. at 2 (internal quotation marks omitted).)

Each of these matters was moot by the time plaintiff's motion reached this court. Accordingly, plaintiff's request for an order to show cause (Dkt. No. 45), is denied as moot.

VII.   Plaintiff's Motions Concerning his Transfer to San Quentin

On November 21, 2011, plaintiff filed a notice of change of address, indicating that he is now incarcerated at San Quentin State Prison.  (Dkt. No. 50.)  Plaintiff sought to prevent this transfer, pursuant to a request for a stay and temporary restraining order, filed October 14, 2011. (Dkt. No. 47.)  Defendants filed an opposition (Dkt. No. 48); plaintiff filed a reply (Dkt. No. 49). Although that motion is now moot (and without merit, as discussed below), plaintiff thereafter filed another motion for preliminary injunctive relief (Dkt. No. 51), wherein he challenges his current conditions of confinement at San Quentin.

////

A. <u>Legal Standards</u>

As this court previously noted in this action, a preliminary injunction should not issue unless necessary to prevent threatened injury that would impair the court's ability to grant effective relief in the action. Fed. R. Civ. P. 65; <u>Sierra On-Line, Inc. v. Phoenix Software, Inc.</u>, 739 F.2d 1415, 1422 (9th Cir. 1984); <u>Gon v. First State Ins. Co.</u>, 871 F.2d 863 (9th Cir. 1989). The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision pursuant to a trial on the merits. <u>See</u> 11A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 2947 (2d ed. 2010). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting <u>Winter v. Natural Res. Def. Council, Inc.</u>, 129 S. Ct. 365, 375-76 (2008). In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

B. <u>Discussion</u>

In his initial motion (Dkt. No. 47), plaintiff alleges that his transfer was retaliatory, consistent with a pattern of retaliatory acts since 2005 or 2006, but he does not elaborate, other than stating that the classification committee routinely transfers inmates who have no jobs, yet intentionally refuses to offer jobs to inmates. (Dkt. No. 47 at 3, 5.) Plaintiff also alleges that San Quentin is not an appropriate placement for him, because it is a higher security facility than CSP-SOL, where plaintiff was accustomed to "dorm living," fewer restrictions, and more privileges. (<u>Id.</u> at 5.) Plaintiff also states that San Quentin is "further north" than CSP-SOL, which creates additional hardships because plaintiff is from Los Angeles. (<u>Id.</u>) Plaintiff's only medically-related contentions are that the cells at San Quentin have "inadequate ventilation," which will

"aggravate" his "puncture lung" (id.), and that the move demonstrates "disregard for plaintiff['s] life when under doctors['] care," (id. (internal quotation marks omitted)).

Only plaintiff's medically-related contentions are remotely related to the instant action. None of the other reasons for seeking retention at CSP-SOL are addressed in this action, and hence provide no basis for granting injunctive relief. Even plaintiff's medically-related reasons are too tangential to warrant maintaining plaintiff's incarceration at CSP-SOL. Plaintiff's asserted lung problems are not addressed by this litigation. Plaintiff's newly-stated desire to maintain the continuity of his health care at CSP-SOL runs counter to his claims in this action. Plaintiff fails to demonstrate that his continued incarceration at CSP-SOL was necessary for the court to preserve the status quo before reaching the merits of this action.

More significantly, convicted prisoners have no reasonable expectation that they will remain in any particular facility, and prison officials have broad authority to transfer prisoners from one facility to another. Meachum v. Fano, 427 U.S. 215 (1976); Montanye v. Haymes, 427 U.S. 236 (1976). "[A] prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him to any of its institutions, indeed, even to a prison in another state, without offending the Constitution." Bravo v. Hewchuck, 2006 WL 3618023, *1 (N.D. Cal. 2006) (citations omitted); Olim v. Wakinekona, 461 U.S. 238, 245-246 (1983). Therefore, plaintiff's motion to prevent his transfer to San Quentin, while now moot, is also without merit.

Plaintiff's more recent motion for preliminary injunctive relief (Dkt. No. 51), challenges conditions of confinement at San Quentin. Plaintiff's allegations include the alleged failure of prison staff to abide by plaintiff's "low-bunk chrono;" computers that are "not updated;" failure of medical staff to properly treat plaintiff when he "blacked-out" on December 6, 2011, while working in the law library; improper classification of plaintiff to "close custody" status; failure to give plaintiff his television; alleged lack of cleanliness, lack of electricity and lighting. (Id.) None of these allegations address the merits of the instant action. Therefore, plaintiff's

pending motion for a temporary restraining order should be denied.

For the foregoing reasons, it is recommended that both of petitioner's pending motions for preliminary injunctive relief be denied.

VIII. Admonishment to Plaintiff

Plaintiff is cautioned that a litigant proceeding in forma pauperis, particularly one who is already a "three strikes" litigant pursuant to 28 U.S.C. § 1915(g), may suffer restricted access to the court where it is determined that he has filed excessive motions in a pending action. DeLong v. Hennessey, 912 F.2d 1144 (9th Cir. 1990); see also Tripati v. Beaman, 878 F2d 351, 352 (10th Cir. 1989). Plaintiff is directed to refrain from filing in this action any further motion for injunctive relief, absent an extraordinary and compelling reason that is clearly related to the merits of this case. Should plaintiff fail to abide by this admonition, the court will consider whether it is necessary to restrict plaintiff's access to the court.

IX. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion (Dkt. No. 37) to strike the affirmative defenses set forth in defendant Hsieh's answer to the Second Amended Complaint, is denied.

2. Plaintiff's motion (Dkt. No. 39) to strike defendant Hsieh's discovery requests is granted, without prejudice to the requests being later propounded.

3. Plaintiff's motion for issuance of an order to show cause (Dkt. No. 45), is denied.

In addition, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (Dkt. No. 31), should be granted in part and denied in part; the court should dismiss plaintiff's damages claims against defendants in their official capacities, but deny defendants' motion to dismiss defendant Traquina from this action.

2. Plaintiff's motions for preliminary injunctive relief (Dkt. Nos. 47, 51), should be denied.

3. Plaintiff's request (Dkt. No. 41) for leave to file his proposed Amended Supplemental Complaint (Dkt. No. 42), should be granted, and Dr. Wenneker should be added as a defendant in this action.[5]

4. Plaintiff should be granted leave to file, within twenty-eight (28) days after the filing date of the district judge's order, a comprehensive Third Amended Complaint against defendants Hsieh, Traquina and Wenneker; failure to timely file a Third Amended Complaint will result in this action continuing to proceed on plaintiff's Second Amended Complaint (Dkt. No 22), and Amended Supplemental Complaint (Dkt. No. 42).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 21 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within 14 days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 2, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

step1678.mtd.etc.

---

[5] Should the district judge adopt these findings and recommendations, the undersigned magistrate judge will provide plaintiff with instructions regarding service of process on defendant Wenneker.